MARTIN et al. v. INCE.

(Court of Civil Appeals of Texas. Ft. Worth. April 13, 1912. On Motion for Rehearing, May 25, 1912.)

1. BROKERS (§ 102*) — MISREPRESENTATIONS BY BROKER—LIABILITY OF PRINCIPAL.

Representations as to the character of the land are within the scope of the duties of an agent, employed merely to find a purchaser for the land and having no authority to sell or exchange, and are binding on the principal.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 146; Dec. Dig. § 102.*]

**2. FRAUD (§ 52*)—FALSE REPRESENTATIONS—ACTIONS—EVIDENCE.**

A husband and wife conveyed land in exchange for other land; the husband alone executing notes for the difference in the price. In an action on the notes, he defended on the ground of fraud and deceit practiced on his wife and himself. *Held*, that the wife's testimony as to the false representations made to her concerning the character of the land taken in exchange, and her reliance thereon, was competent; she being a party to the exchange, although not a party to the action.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 48; Dec. Dig. § 52.*]

**3. WITNESSES (§ 372*)—CREDIBILITY—INTERESTED WITNESSES — CROSS-EXAMINATION — SCOPE.**

Where interested witnesses testified to the value of certain land, it was within the discretion of the court to permit cross-examination as to what they would give for it to test their credibility.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1192–1199; Dec. Dig. § 372.*]

**4. EVIDENCE (§ 113*) — RELEVANCY — VALUE OF PROPERTY—TIME OF VALUATION.**

In an action involving the falsity of representations as to the value of land, where there was evidence that its value at the time of the trial was the same as when the representations were made, the admission of depositions giving the witnesses' opinions of its value when the depositions were taken was proper.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 259–296; Dec. Dig. § 113.*]

**5. EVIDENCE (§ 488*)—OPINION EVIDENCE—VALUE OF REAL PROPERTY.**

In an action involving the value of land, testimony of witnesses, shown to be qualified to give such an opinion, that the land was not suitable for cultivation, was properly admitted.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2273; Dec. Dig. § 488.*]  ·

**6. APPEAL AND ERROR (§ 1050*) — REVIEW — HARMLESS ERROR.**

Although a surveyor's certificate attached to a plat of land is hearsay, its admission was harmless, where the surveyor, who prepared the plat, testified that it was correct; it being improbable that the jury were influenced by the certificate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

**7. APPEAL AND ERROR (§ 1062*) — REVIEW — HARMLESS ERROR.**

Where the defense to an action on notes was fraud, and defendant admitted his liability except so far as it might be defeated by his plea of fraud, and the court gave a peremptory instruction for plaintiff subject to the same contingency, an instruction that the burden was on defendant to prove the fraud, and unless he had done so the jury need consider the case no further, was not prejudicial to plaintiff, since it must have been understood by the jury as referring only to defendant's plea.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

**8. EVIDENCE (§ 271*)—DECLARATIONS—SELF-SERVING DECLARATIONS.**

Where a party exchanging land with another, when sued on his notes for the difference in the value, defended on the ground of false representations as to the character of the land taken by him, his testimony, that after he first saw the land he notified the other party that it was not of the quality represented and demanded a rescission, was competent to show that he had not ratified the transaction after discovering the fraud and to contradict a possible inference that his testimony, as to the false representations, was an afterthought and untrue.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1068–1079, 1081–1104; Dec. Dig. § 271.*]

On Motion for Rehearing.

**9. TRIAL (§ 85*)—RECEPTION OF EVIDENCE—OBJECTIONS — EVIDENCE ADMISSIBLE IN PART.**

Where it appeared that some of an agent's misrepresentations as to the character of land were made after he was employed to find a purchaser therefor, an objection to the testimony concerning such representations as a whole was properly overruled.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 223–225; Dec. Dig. § 85.*]

Appeal from District Court, Comanche County; J. H. Arnold, Judge.

Action by J. C. C. Martin and another against Robert Ince. From a judgment for defendant, plaintiffs appeal. Affirmed.

Kearby & Kearby, of Comanche, for appellants. Odell & Johnson and O. T. Plummer, all of Cleburne, for appellee.

DUNKLIN, J. J. C. C. Martin and G. W. Dingus instituted this suit against Robert Ince to recover the principal, interest, and attorney's fees stipulated in eight promissory notes executed by Ince as a part of the consideration for 160 acres of land in Coleman county, Tex., conveyed to Ince by the plaintiffs, and to foreclose the vendor's lien on the land. In the transaction between the parties, Ince conveyed to plaintiffs a tract of land in Oklahoma, in exchange for the land deeded to him, and the notes were executed to cover the difference in the estimated values of the two tracts. In his answer Ince alleged that, in order to induce him to make the trade, plaintiffs and their agents falsely and fraudulently represented to him that the land which was afterwards conveyed to him was rich, level, black, hogwallow prairie land, suitable for farming purposes, and worth $20 per acre; that he and his wife relied upon those representations, and were thereby induced to make the exchange of their land in Oklahoma for the Coleman county land without first seeing and examining it. Ince further alleged that the Oklahoma land so conveyed to plaintiffs was more valuable than the Texas tract, and he prayed for judgment over against plaintiffs for a cancellation of the notes sued on and for the amount which the Oklahoma land was worth, at the date of the exchange, in excess of the value of the Texas tract. The trial resulted in a verdict and judgment in favor of Ince against plaintiffs for $200 and canceling the notes sued on. From that judgment, plaintiffs have appealed.

By uncontroverted evidence it was shown

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

that J. H. and T. A. Russell, real estate agents, were employed, by both the parties to the exchange, to assist in the negotiations; each party agreeing to pay the agents a commission in the event a trade was consummated. Ince received from these agents his first information of the Coleman county land and of its owners, and. through these agents some preliminary negotiations between the parties were conducted prior to their meeting. At a meeting of the parties following the preliminary negotiations, the trade was consummated. According to the testimony of Ince, some of the alleged ˈmisrepresentations of the character and quality of the land was made to him by the agents as well as by plaintiffs, after employment of the agents by plaintiffs.

[1] Complaint is made by the plaintiffs of the trial court's refusal to give their requested instruction, the effect of which was that any misrepresentations of the character of the land made by the agents could not be binding upon plaintiffs, if the agents were employed merely to find a purchaser for the land, and had no authority to make any sale or exchange of plaintiff's land. Representations of the character of the land certainly were within the scope of the agents' duties to find a purchaser for it; hence the requested instruction was properly refused.

We do not think that the charge given by the court is subject to the criticism, made in other assignments of error, that it assumed that the representations made by the agents to Ince relative to the character of plaintiffs' land were within the scope of their employment; but, even if it should be so construed, it was not error, in view of the evidence already recited.

[2] Mrs. Ince joined with defendant, her husband, in executing the deed to plaintiffs, conveying them the land in Oklahoma. She testified that, at the time she executed and acknowledged the deed, she objected to so doing until she could see the Coleman county tract, and that thereupon Mr. Russell said: "It is all black, level, .hog-wallow land, just like Mr. Martin and Dingus said it was. These men are both reliable men and cannot afford to misrepresent anything." Mrs. Ince further testified: "I certainly would not have signed the deed had it not been for the representations Mr. Russell made to me about the kind of land it was that we were getting in Coleman county." Other witnesses testified substantially the same as did Mrs. Ince relative to substantially the same statements made by Mr. Russell on that occasion. There was no error in the admission of this testimony over plaintiffs' objections thereto that Mrs. Ince was not a party to the suit. While Mrs. Ince was not a party to the suit, yet she was a party to the trade, as evidenced by her execution of the deed conveying to plaintiffs the Oklahoma land, and defendant's plea

over against plaintiffs contained a specific allegation, to which plaintiffs invoked no exception, that the fraud and deceit was practiced upon his wife as well as upon him, and induced both to execute the deed to the Oklahoma land.

[3] Plaintiffs both testified that Coleman county land was worth from $15 to $20 per acre. On cross-examination each of them was asked whether or not he would give defendant $14 per acre for it, and each answered that he was not buying land. There was no error in overruling plaintiffs' objection to the question for irrelevancy, as it was within the discretion of the court to permit the question, as a matter of legitimate cross-examination, to test the credibility of the witnesses who were parties in interest.

[4, 5] As evidence was introduced showing the value of the Coleman county land at the time of the trial to be the same as it was when the trade was consummated, there was no error in admitting the testimony of the witnesses Lancaster, Cantley, and McElrath, by depositions taken shortly before the trial, giving their opinions of its value at the time the depositions were taken. The testimony of the same witnesses that the land was not suitable for cultivation was properly admitted, as their answers to other questions propounded showed them to be qualified to give such opinions.

[6] The surveyor's certificate attached to the plat of the land introduced in evidence was hearsay; but the surveyor who prepared the ˈplat testified that the map was correct, and it is improbable that the contents of the certificate had any influence with the jury.

[7] The following instruction appears in the court's charge: "The burden is upon the defendant to prove his allegation of fraud by a preponderance of the evidence, and unless he has done so you need consider the case no further." Defendant had admitted plaintiffs' right to recover upon the notes executed by him except in so far as the same might be defeated by the plea of fraud and deceit urged, and the court gave a peremptory instruction in plaintiffs' favor subject to the same contingency. Under those instructions, certainly, the jury must have understood the instruction upon the burden of proof, copied above, as applicable only to defendant's plea over, and, so construed, it was favorable and not harmful to the plaintiffs.

[8] Nor was there error in permitting defendant to testify that after the trade was consummated, and after he had seen the Coleman county land for the first time, and had discovered that it was not of the quality represented, he saw plaintiff Martin and informed him of that fact, and demanded a rescission of the trade. The evidence was competent to show that he did not ratify the transaction after discovering the alleged

fraud, and to contradict a probable inference that otherwise might have been indulged that his testimony given on the stand was an afterthought and untrue.

The verdict was fully supported by the evidence, and there was no error in overruling the motion for a new trial predicated upon the contention to the contrary effect.

Judgment is affirmed.

### On Motion for Rehearing.

[9] Through inadvertence, our reasons for overruling appellants' eleventh assignment of error were omitted from the original opinion. By that assignment complaint is made of the trial court's refusal to sustain appellants' objection to the testimony of Ince concerning statements made by J. H. Russell, when Ince first went to the office of Russell Bros. in Comanche, as follows: "Russell said to me, 'We have got 160 acres of good black land for sale in Coleman county, and the man lives here in town that owns it, and I will go around to see him and see if we can make a trade,' and said that it was good, black land. Russell returned to the office by himself and told me that the man wanted $20 per acre for the land, $3,200; but he says, 'I can get it for you for $3,000,' and he said, 'I told him about your place in Oklahoma,' and he seemed to be well pleased with that country, and he says, 'I can get a trade for you for $1,000 to boot.' He did not tell me, nor did I know, who the man was that owned the land. Russell then said, 'Well, it is every bit good black land.'"

Appellants insist that, at the time that these alleged statements were made by Russell, he (Russell) was not the agent of appellants to negotiate a trade, and hence evidence of such statements was not admissible against them. The proof seems uncontroverted that, when Ince first went to the office of Russell Bros., these gentlemen were not the agents of appellants to sell the land. But J. H. Russell testified that, when he saw appellant Martin on the occasion referred to by Ince, he (Martin) agreed to pay Russell Bros. a commission in the event the trade was made with Ince. Thus it clearly appears that the statement that the land was "every bit good black land," made to Ince by Russell after seeing Martin, was admissible, even though the same statement made before Russell conferred with Martin was inadmissible. But appellants objected to the testimony as a whole, and, as a part of it was admissible, the assignment now under discussion is overruled. G., H. & S. A. Ry. Co. v. Gormley, 91 Tex. 393, 43 S. W. 877, 66 Am. St. Rep. 894; Jamison v. Dooley, 98 Tex. 206, 82 S. W. 780; Cotton Oil Co. v. Jonte, 36 Tex. Civ. App. 18, 80 S. W., loc. cit. 850.

The motion for rehearing is overruled.