CITY OF SAN ANTONIO v. ASHTON.†

(Court of Civil Appeals of Texas. Feb. 8, 1911. On Motion for Rehearing, March 29, 1911.)

1. NEW TRIAL (§ 171*) — AMENDMENT OF PLEADINGS—NECESSITY.

On a new trial, plaintiff need not replead and embody all of his pleadings in an amended petition unless ordered to do so by the court, but may proceed to trial on his pleadings as they stood, including his trial amendment.

[Ed. Note.—For other cases, see New Trial, Dec. Dig. § 171.*]

2. MUNICIPAL CORPORATIONS (§ 816*)—DEFECT IN STREET—INJURY TO PEDESTRIAN—ACTION —PLEADING—NOTICE TO CITY—SUFFICIENCY.

In a personal injury action against a city whose charter provides that before the city shall be liable for damages, the injured person or some one in his behalf shall give the mayor written notice of the injury within 90 days, an allegation in the petition of written notice to the mayor in the terms of the charter provision was sufficient, though it did not give the date of the notice nor on whom served, nor the name of the mayor nor the character of the service, plaintiff not being required to plead the evidence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1715; Dec. Dig. § 816.*]

3. APPEAL AND ERROR (§ 520*)—NECESSITY FOR BILL OF EXCEPTIONS.

Action of the trial court in overruling an application for continuance cannot be considered on appeal, though excepted to, where there is no bill of exceptions on the subject.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2359-2366; Dec. Dig. § 520.*]

4. APPEAL AND ERROR (§ 301*)—REVIEW—SUFFICIENCY OF EVIDENCE.

Where the motion for new trial does not raise the question of the sufficiency of the evidence to support the verdict, such question cannot be raised in the appellate court under an assignment of error complaining of the refusal of a peremptory instruction.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. §§ 1743, 1753-1755; Dec. Dig. § 301.*]

5. MUNICIPAL CORPORATIONS (§ 802*)—DEFECT IN STREET — INJURY TO PEDESTRIAN — DEFENSES.

That a public hack driver had taken his hack to a place prohibited by ordinance and the police authorities, and was transacting business there, would not preclude his recovery as a trespasser and guilty of negligence per se for an injury sustained while going from his telephone stand to his hack through a plaza by stumbling over a stake in the block pavement where the space across the plaza which he was traversing was one which the public had a right to use; his injury and the position of his hack having no connection.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 802.*]

6. MUNICIPAL CORPORATIONS (§ 819*)—INJURY IN PUBLIC PLACE—ACTIONS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.

In an action against a city for injuries from falling over a stake driven in the pavement of a plaza, the uncontradicted evidence held to show that plaintiff did not know that the stake in question was in the unguarded space which he was traversing, or that the path he took was unsafe, so as to render him negligent.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 819.*]

7. MUNICIPAL CORPORATIONS (§ 822*)—DEFECT IN STREET—ACTION FOR INJURY—INSTRUCTIONS.

In an action against a city for injuries from falling over a tent stake in a plaza which stake had been used in connection with a tent of an amusement association, and had originally been with the others roped in to prevent injury therefrom, but which stake, there was evidence to show, was entirely outside of the inclosure when the accident happened, a charge that if the city used ordinary care in protecting persons traveling across the plaza from falling over the stake by roping it in, and if it could not reasonably be anticipated that any one using ordinary care in crossing the plaza would cross such rope and be injured by falling over the stake, the verdict should be for defendant, was properly refused, since under such charge, if the rope had originally been with due care placed to inclose the stake, the exercise of due care by the city would not require the maintenance of the rope in such position.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 822.*]

8. TRIAL (§ 252*)—INSTRUCTIONS.

In an action against a city for injuries from a fall over a tent stake left in a public place by a carnival association, a charge that granting of permission to such association of the right to use a portion of the public square would not be unlawful provided such right was not exclusive was properly refused, where the evi-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court April 26, 1911.

dence showed that the permission granted was exclusive.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 596–612; Dec. Dig. § 252.*]

9. MUNICIPAL CORPORATIONS (§ 816*) — DEFECT IN STREET—INJURY TO PEDESTRIAN—PLEADING AND PROOF.

In an action against a city for injuries from a fall over a tent stake left in a public place by a carnival association, occupying the place by permission of the city, where the petition did not mention the association, but charged the city generally with negligence in reference to the peg being where it was, plaintiff could show the city's negligence in any form, and if the course of such negligence was through the act of the city in granting the association the use of part of the public place, and the association in connection with the purposes of the grant negligently placed the stake in what was retained by the city as a part of its thoroughfare for the use of the public, and the presence of such obstruction was known to the city or should, by proper diligence, have been known to it, such facts could be shown under the petition; the form of the negligence being matter of proof.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 816.*]

10. MUNICIPAL CORPORATIONS (§ 762*)—PUBLIC PLACES — LIABILITY FOR INJURIES TO PUBLIC.

Even if a city had power to confer on an association the exclusive right of a part of a public thoroughfare or plaza for erecting structures for show purposes, the obligation of the city to the public using the thoroughfare would not cease, and if to the city's knowledge the association in erecting and maintaining its structures and in connection with the use thereof placed dangerous obstructions in an exposed part of the premises, or in what was retained of the thoroughfare for the public use and the city with knowledge thereof permitted it to remain there, it would be liable for not exercising reasonable care in that regard equally with the association to one of the public injured thereby.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1605–1611; Dec. Dig. § 762.*]

11. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

A charge that if a city gave to a carnival association the exclusive use of part of a plaza where plaintiff claimed to have been injured, and such association permitted an iron peg to be placed there with the knowledge of officers of the city having charge of such matters, or if such peg remained there so long that the city's officers should by ordinary care have known of such condition, and if plaintiff, in the exercise of ordinary care for his safety, fell over the stake and was injured as alleged, and if the city was negligent in permitting the peg to be in such condition at the time and place, and such negligence was the direct cause of plaintiff's injury, if any, plaintiff should recover, was not a charge upon the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 439–441, 446–454; Dec. Dig. § 194.*]

### On Motion for Rehearing.

12. APPEAL AND ERROR (§ 713*)—RECORD.

In a personal injury action against a city, a claim in the city's motion for new trial that the court erred in admitting in evidence the notice of injury served on the mayor, because not sufficient, amounted to an admission by the city that such a notice was introduced in evidence which may be considered on appeal, though the statement of facts shows no testimony on the subject, so that the city would not be entitled to a reversal on the ground that there was no proof of notice as required by defendant city's charter.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 713.*]

13. APPEAL AND ERROR (§ 654*) — RECORD — CORRECTION OF STATEMENT OF FACTS.

On appeal by defendant in a personal injury action against a city, where the statement of facts inadvertently omitted the recital that a written notice to the city of the injury required by the city charter was introduced in evidence, the appellate court, where a certified copy of such notice full and complete was sent up from the trial court, with an order of the judge that the notice was introduced in evidence, but inadvertently omitted from the record, may consider the notice as a part of the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2819–2822; Dec. Dig. § 654.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by John Ashton against the City of San Antonio. Judgment for plaintiff, and defendant appeals. Affirmed.

Ryan & Ryan, for appellant. Terrell & Terrell, T. J. Newton, and Will A. Morriss, for appellee.

JAMES, C. J. Plaintiff, Ashton, in his amended petition filed February 11, 1908, alleged that on or about April 22, 1906, about 3 o'clock a. m., he was walking across the northeastern part of Main Plaza, along a place which has been for many years dedicated to the public use as a street or passway for public travel, and for many years constantly used by the public as a street or passageway for public travel, and which for all intents and purposes is a street in the city of San Antonio, and that while walking across same he tripped and fell over an iron bar which had been driven in the ground or blocks of said plaza and left protruding above same, causing him to fall and break his leg; that the city knew that said bar was so protruding, or could have known by the use of ordinary care that same was left in an unsafe and unprotected condition for people walking thereon, especially at night, and permitted said bar to be placed and kept in its said condition and position, all of which was known, or could have been known, by the use of ordinary diligence and care; that said bar had been for some time in said position and the city suffered it to remain so, and that said negligence of the city in permitting it to remain in said position caused the injury to plaintiff. On November 14, 1906, the city filed answer, excepting to plaintiff's original petition for the reason that the same did not show that the notice required by defendant's charter as a condition precedent to plaintiff's suit had been given as required by the charter, and pleading a general denial; also pleading that plaintiff's injury, if any, was not due to the city's negligence; that the city had no notice of the al-

leged defect, and could not have known of it by the use of ordinary diligence; that the alleged obstruction was patent to plaintiff, and also that he was guilty of contributory negligence; that plaintiff was a trespasser where he claims he was hurt, and that he was at the time engaged in business as a hack driver, and had his hack stationed at a place which was contrary to the ordinance and police regulations of the city, and where he had no right to station same, and, if he was injured, he was injured in passing over said plaza to the place where his hack was stationed, and that, if he had complied with the ordinance and regulation, he would not have stationed his hack at such place and would not have been injured; that he was a trespasser on the plaza and premises where he claims to have been hurt, and that the same had been set apart for the use of the San Antonio Spring Carnival Association by the city authorities, which association was in exclusive possession of the same at that time, and that neither the said association nor the city had given plaintiff any license or permission to be there then, and he was at the place where he claims to have been hurt in violation of the right of said association; that plaintiff was merely a licensee, and if he had any authority whatever to use said plaza, and, if the obstruction existed, he knew of the same and assumed the risk thereof, and that the obstruction, if it existed, was the act of said association, which was in control of said portion of the plaza at the time of the alleged injury and caused said obstruction to be placed there, that the city did not permit same to be so placed, and the said association is primarily liable therefor, and prayed for citation to said association and that, if any judgment be recovered against the city, that it have judgment over against it. The association was brought in and answered.

It appears from the record that on October 26, 1908, a trial was had, and on that day the court overruled defendant's exceptions to the original petition, but, notwithstanding the ruling, plaintiff filed a trial amendment setting up the fact that the notice of plaintiff's injury was given the mayor as required by the charter. A new trial was granted in December, 1908. The pleadings stood in this condition in January, 1910, when the case was last tried; that another trial amendment appears to have been then filed substantially as the former one as to said fact of notice. We refer to these conditions because appellant bases an assignment of error upon them. The trial resulted in a verdict in favor of plaintiff against the city for $1,800, with recovery over by the city against the carnival association. The city prosecutes this appeal.

Appellant's assignments Nos. 1, 2, 3, and 4 relate to a question of pleading in reference to the notice of plaintiff's injury required by the charter to be given the mayor within 90 days after its occurrence. Section 46 of the charter reads: "Before the city of San Antonio shall be liable for damages of any kind, the person injured, or some one in behalf of such person, shall give the mayor notice in writing of such injury within 90 days after the same has been received, stating in such notice when, where, and how the injury occurred and the extent thereof." The force of the special exception to the petition was overcome by the filing of the trial amendment. It is one of appellant's contentions that the last filing of the trial amendment was improper; that the first filing thereof was proper only for the purposes of the former trial at which it was filed, but that more than 12 months elapsed between that and the recent trial, consequently the pleading should have been incorporated in an amended pleading, and not in the form of a trial amendment. Appellant upon substantially this ground demurred specially to the last trial amendment. We are of opinion that if the last trial amendment had not been filed at all, or if it had been stricken out in response to the demurrer, the trial amendment first filed was still on file and was sufficient. Plaintiff was not required to replead and embody all of his pleadings in an amended petition, unless ordered by the court to do so. He could proceed to trial on his pleadings as they stood, including his trial amendment, without repeating his trial amendment on the second trial. The said assignments are overruled.

The fifth and sixth assignments raise the question of the sufficiency of the trial amendment, in that "said trial amendment does not give the day, date, or time of such notice, nor on whom served nor the name of such mayor, nor the character of such service," and that "the allegations thereof are mere conclusions of the pleader, and do not allege the facts thereof." The allegations were in the terms of the charter provision, and this was sufficient pleading. Plaintiff was under no necessity of pleading the evidence.

Appellant's seventeenth assignment is overruled. It complains of the action of the court in refusing a continuance. The order overruling the application was excepted to, but there is no bill of exception on the subject. Railway v. Mallon, 65 Tex. 115; Simpson v. Texas Tram Co., 51 S. W. 655.

The seventh assignment is that the court erred in refusing to instruct the jury to return the verdict for the defendant. Under this, we have the proposition that plaintiff failed to prove that notice was given as required by section 46 of the charter, and we find, as stated by appellant, that the statement of facts fails to disclose any testimony on that subject. We overrule the assignment upon the authority of Ellis v. Brooks, 101 Tex. 591, 102 S. W. 96, 103 S. W. 1196, and I. & G. N. R. R. Co. v. Owens, 124 S. W. 212. The motion for new trial did not

raise this question of insufficiency of the evidence to support the verdict, and the above cases hold that such question cannot be raised in this court under an assignment of error complaining of the refusal of a peremptory instruction. Not only did the motion for new trial not raise such question, but, where it refers to the subject of the notice, it shows that there was some testimony of it. The third ground in the motion reads: "The court erred in admitting in evidence the notice ˮof injury served on the mayor, because not sufficient." Under this, if assigned, we might have passed on the sufficiency of such evidence, but, it not being in the statement of facts, we are unable to do so.

The eighth assignment is that the uncontroverted evidence showed that Ashton was a trespasser on that part of the plaza where he was injured, and appellant's proposition is that, the uncontroverted proof showing that he was a public hack driver who had stationed his hack in a place forbidden by city ordinance and by the police authorities, and that he himself was transacting such business at a place lawfully closed to him in violation of the ordinances and orders of the police authorities, he was a trespasser in law, and therefore guilty of negligence per se, precluding a recovery. There is no merit in the proposition. Say the testimony showed that plaintiff had his hack stationed for the time being at a prohibited place for such use, his injury and his hack had no connection with each other, except that he was in the act of going along the plaza back in the direction of his hack when he went against the obstruction in the plaza. His hack was standing in such place. He had gone over to the Elite corner on the sidewalk opposite the place, and while there he received a telephone call. To get to the telephone stand. he had to go back by his hack to the telephone booth a little way beyond it, which all the evidence shows he was permitted to do by the authorities, using the open intervening space across the plaza to the booth for the purpose. He had received a call, and, in the act of going from the booth to his hack, he stumbled over the peg, which was in the open space, and which had been placed there to hold a rope supporting an adjoining amusement tent. Under these circumstances, he had a right to be walking where he was and to walk in the direction of his hack, although he may have been violating the ordinances by having left his hack there. It could just as well be claimed that while he was violating an ordinance by having his hack in a space prohibited for such use, he could not complain of an injury received in some other part of the city from a defective highway, if in fact he was in the act of going to his hack. Suppose he had not received a call for his hack, and in consequence had been returning to the sidewalk, instead of the hack, and had stumbled against the peg, would it be claimed that, because he had his hack in an improper place, he could not complain of his injury? What plaintiff was doing at the time was simply to walk over a space that he had a right to use for that purpose, whether it was to walk to his hack or back to the sidewalk. Certainly his walking back to his hack for the purpose of driving it off was not an unlawful act. The proposition that the uncontroverted proof showed plaintiff was engaged in a violation of the city ordinances, etc., when injured, and therefore cannot recover, is not sustained.

For the same reasons we overrule the ninth, tenth, and thirteenth assignments of error.

The eleventh is that the uncontroverted evidence is that plaintiff knew of the spike over which he fell and its location, and was therefore guilty of contributory negligence. This is not the uncontroverted testimony. His testimony does not go as far as to admit that he knew the spike was in the open space leading to and from the telephone booth, which was located at the entrance leading from the plaza to the German village, which village inclosed the park in the interior of the plaza. He admitted he knew that there were spikes of this character driven into the block pavement of that part of the plaza, but did not know that the one he stumbled on was where it was. It was a spike to which a guy rope supporting the front part of a tent called "Creation" was attached. He knew the tents were thus supported. But there was testimony that from the entrance leading into the German village precautions had been taken to extend a rope which was passed through rings on posts driven into the pavement, and which led from said entrance to the entrance to said tent, a distance of 30 or 40 feet, and that this precaution was designed to inclose all of the stakes, and to guard the public from coming in contact with them, and that outside of that rope inclosure there were supposed to be no such stakes. There was testimony that this particular stake was outside of this rope, and in the open, unguarded space left for the public to use, and that plaintiff did not go inside of the rope, but was hurt on the outside of it, and that he did not know of its presence in that space. The testimony did not show indisputably, as is claimed by the assignment and also by the following one, the 12th, that he knew the spike in question was in that· unguarded space, nor that the path he took was unsafe and dangerous. Consequently we overrule both of them.

The fourteenth complains of the refusal of the following instruction: "If from the evidence you believe that the defendant city used ordinary care in protecting persons traveling across the plaza from falling over the iron peg upon which plaintiff claims to have been injured, by roping or fencing the·

same in, and you further believe that said city did so cause said peg to be roped or fenced in, and that by so doing it could not reasonably be anticipated that any one using ordinary care in crossing said plaza would cross said rope or fence and be injured by falling over said peg, then your verdict must be for the defendant." There was testimony to the effect that when the tent was originally put up, a week or so before this occurrence, the precaution was taken to inclose by means of said rope all the stakes connected with this tent, and there also was testimony showing that all of the stakes, including this one, remained within that inclosure, and that such was the condition when plaintiff was hurt. If this testimony should have been accepted by the jury, it would tend to contradict plaintiff and his witnesses as to the stake being outside of the inclosure, and went to show that plaintiff was walking inside the inclosure when he ran into the stake. It is difficult to comprehend how plaintiff could have been outside of the rope when he encountered the stake, if, as witnesses testified, the stake was some two feet inside of along where the rope was extended. In other words, there was a condition of evidence which would have warranted the jury in concluding that plaintiff had gone over into the inclosure, and in walking there in the dark, knowing stakes were there, he met with the accident. In that view of the case he would have had himself only to blame for his misfortune. It was doubtless upon this theory of the evidence that the charge was asked, and, if the charge had been a correct one, it should have been given. But from the evidence the jury, while they may have believed that the stakes were all inclosed originally including this one, yet they may have given credit to those witnesses who testified that this stake was entirely outside of the inclosure when the accident happened to plaintiff. If so, the original fencing was not maintained, and it clearly would have been improper to give a charge on this theory of the case, which would, in effect, have told the jury that if the rope fence had been, with due care, built so as to inclose this stake originally, that was all that was required in the exercise of due care, without reference to its maintenance in that position; there being evidence showing that it was not so, when the accident occurred.

The sixteenth assignment is overruled as the permission to the carnival association to use a part of the plaza was exclusive, as shown by all the evidence. The charge, the refusal of which is complained of by the assignment, was: "You are instructed that the granting of permission to the carnival association of the right to use a portion of the public square or common is not unlawful, provided such right is not exclusive." Plaintiff cannot well complain of the refusal of the charge when all the evidence showed that it was the intention to grant an exclusive right.

The fifteenth assignment complains of the following instruction: "The city of San Antonio has no power to delegate the exclusive use of its public streets or plazas or any part of them to any person, firm, or corporation. If, therefore, you find from the evidence that the city of San Antonio permitted or delegated to the San Antonio Spring Carnival Association exclusive use or control of that part of Main Plaza where plaintiff claims to have been injured, and that the said association placed or permitted to be placed an iron pin or peg in said plaza, and (if same was so placed) that same was protruding above the surface of said plaza, and you further find that the city of San Antonio, through some of its officers or agents, having charge of such matters, knew that said pin or peg, if any, had been so left and was protruding (if you so find) above the surface of said plaza, or that said pin or peg had remained at said point, and in said condition for such length of time prior to plaintiff's injury that the said city, through its officers or agents having charge of such matters, should and would by the exercise of ordinary care and diligence have known of such protrusion and condition of said pin or peg (if it was so), and if you further find from the evidence that plaintiff, while in the exercise of ordinary care for his own safety (if you find he was exercising ordinary care), while moving over and along said plaza, tripped or fell over said pin or peg, and was injured as claimed in his petition (if he did so fall), and if you further find that it was negligence on part of defendant city to have permitted said peg or pin to have been in such condition at said time and place (if it was so), and that such negligence, if any, was the direct cause of plaintiff's injury, if any, then you must return a verdict in favor of plaintiff and against the defendant, city of San Antonio."

The first complaint is that the above presents an issue not raised by the pleadings, referring, as we infer from the statement. to the pleadings of plaintiff, the statement being "that the petition charges negligence in the permitting of the peg to be driven in the plaza, and not in the granting to or use by the carnival, exclusively, of said plaza, nor that the carnival association placed or permitted the peg in the plaza, nor the wrongful act in granting such use to said association, nor any negligence of the association, whereas the above charge makes the city liable for the negligence of the association without proper pleading therefor." The petition did not mention the carnival association, and charged the city generally with negligence in reference to the peg being where it was. Under this petition, it was proper for the plaintiff to show the negligence of the city in any form, and if the course of such negligence was through the act of the city in granting the carnival association the use

of part of the plaza, and said association in connection with the purposes of the grant negligently placed the peg in what was retained by the city as a part of its thoroughfare for the use of the public, and the presence of this obstruction was known to the city, or should in the exercise of proper diligence have been known to it, it could be shown under that petition. The negligence alleged was general, and the form of the negligence became a matter of proof.

The second proposition is that the city has the right to temporarily grant the use of parts of its plazas for legitimate purposes among which are bands, processions, public amusements, and meetings and storage of building material in the construction of buildings on abutting property. The brief refers in support of this to section 90 of the city charter, which grants exclusive power and control over the city thoroughfares and plazas, and sections 51 and 71, which grant the care, management, and control thereof and authorizes musical concerts in the city parks and plazas. The above is no grant of power to confer on a person or corporation the exclusive use of part of a thoroughfare or plaza for erecting structures for show purposes. But, assuming that the city could exercise such power, the obligation and liability of the city to the public using the thoroughfare would not cease by the making of the grant. If, to its knowledge, the person or corporation in erecting and maintaining its structures and in connection with the use thereof placed a dangerous obstruction in an exposed part of the premises, or in what was retained of the thoroughfare for the use of the public, and the city, with knowledge, actual or constructive, permitted it to remain there, it would be liable for not exercising reasonable care in that regard. In such circumstances, the city would be equally liable with the association to one of the public for the injurious consequences. Grider v. Jefferson Realty Co. (Ky.) 116 S. W. 691. It will be noted that the charge in question provided that it was essential to the city's liability that it had notice of the existence of the defect. There are cases which go so far as to hold that the city would be liable in such circumstances regardless of notice to it. Van Cleef v. Chicago, 240 Ill. 318, 88 N. E. 816, 23 L. R. A. (N. S.) 636, 130 Am. St. Rep. 275.

The third proposition is that the charge was on the weight of the evidence. The point intended to be made is indicated in this language: "The charge indicates to the jury the court's opinion that the city is liable and the jury must find for plaintiff against it, because it had delegated exclusive use of the plaza to the carnival association, and therefore regardless of any precautions taken by said association or of plaintiff's right to travel over that portion of the plaza closed to him by the city authorities." The charge expressly provides that the city must have been guilty of negligence in the matter, and this involved consideration of the precautions that had been taken by itself and the association. No charge was asked respecting the sufficiency of the precautions taken except by the charge referred to by the 14th assignment of error which, as we have seen, was correctly refused.

The brief presents no sufficient ground for reversal, and the judgment is affirmed.

### On Motion for Rehearing.

In reference to the point insisted on in the motion for rehearing, to wit, the failure of the statement of facts to show any evidence introduced of notice to the mayor within 90 days, we have called attention to the fact that in its motion for new trial the city complains as follows: "The court erred in admitting in evidence the notice of injury served on the mayor because not sufficient." The seventh assignment of error complains of the refusal of a peremptory instruction for the defendant. It is under this assignment that appellant makes the proposition that plaintiff failed to prove that any notice as required by section 46 of the charter was given. If such point may be raised in this manner, the opinion of the writer is that, although the statement of facts shows no testimony on the subject, the record otherwise shows that there was evidence introduced of notice served on the mayor. The motion for new trial deals with this matter as follows: "The court erred in admitting in evidence the notice of injury served on the mayor, because not sufficient." I take it that a motion for new trial is a pleading filed in the case, with special reference to an appeal from the judgment. It would not, I think, be contended that an admission of a fact in a pleading or in a separate paper would not be considered, although omitted from the statement of facts. The motion contained a clear admission by appellant that there was introduced in evidence a notice of injury served on the mayor. This ground was overruled by the trial judge presumably upon the ruling that the notice referred to in the motion was sufficient. As such notice has not been brought to us, we are unable to determine whether it was sufficient or not. Considering the statement of facts and the motion for new trial, the record is, to say the least, contradictory on the subject; and in this state of the record appellant is not in position to demand a reversal on said ground. Wiseman v. Baylor, 69 Tex. 63, 6 S. W. 743; Ramsey v. Hurley, 72 Tex. 194, 12 S. W. 56; McClelland v. Fallon, 74 Tex. 236, 12 S. W. 60.

I think that the motion should be overruled.

FLY, J. I concur in overruling the motion for rehearing, but I think that the action of

the court should be based not alone on the implied admission of the city attorney in the motion for new trial that some kind of notice was served on the mayor, because that admission must be greatly amplified and much read into it in order to make it comprehend a notice in writing, given in 90 days from the time of the injury, and containing all the requisites provided for in the charter. However, appellee has invoked the aid of the district judge and obtained an order from him to the effect that a written notice was introduced in evidence, but was inadvertently omitted from the record, and a certified copy of it is sent up from the trial court. That notice is full and complete, and I am unwilling to agree that this court cannot consider that notice as a part of the record in this case. It would be a sad commentary on the powers of the courts of Texas, and a travesty upon justice, if it is conceded that a clerical omission of an important paper on file in the trial court, which was used in evidence and omitted by an oversight from the statement of facts, could not be considered by this court. The proposition is intensified by the admission of the appellant that a notice was used in evidence that had been served on the mayor, and the trial court has identified and sent up a certified copy of it. I remember that it is said in Railway v. Lane, 79 Tex. 643, 15 S. W. 477, 16 S. W. 18, that the law provides no means for amending a statement of facts, but in that case no effort whatever was made to obtain the missing paper, and the assertion that the Supreme Court and trial court were unable to correct an admitted error was not called for and was merely obiter dictum. I do not think that a record should be amended by inserting the testimony of a witness, but as to documentary evidence, as to existence of which there can rarely be any contention, I am unable to agree that such an omission cannot be remedied, and that a litigant should be deprived of his judgment.

The rule is, I think, correctly expressed in Elliott's Appellate Procedure, § 548, where it is stated in regard to the authority of trial courts to correct their records: "It seems clear to us that it is unduly stretching the general rule to deny that authority, and that it is a violation of the principle that a court may cause its record to speak the truth. The court in directing amendments and corrections makes no decision upon the questions involved in the appeal, nor does it, indeed, decide any original question or review any questions previously decided. It simply causes the record to truly and correctly present the questions that it decided and to properly exhibit the facts or pleadings upon which its decisions were grounded."

NEILL, J., concurs.